1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   ROSA SALDANA,                    )   Case No. ED CV 16-1212-SP
                                      )
12                  Plaintiff,        )
                                      )
13            v.                      )   MEMORANDUM OPINION AND
                                      )   ORDER
14   NANCY A. BERRYHILL,              )
15   Acting Commissioner of Social Security )
     Administration,                  )
16                                    )
                    Defendant.        )
17                                    )
     _____ )
18

19                               **I.**

20                         **<u>INTRODUCTION</u>**

21         On June 9, 2016, plaintiff Rosa Saldana filed a complaint against defendant,

22   the Commissioner of the Social Security Administration ("Commissioner"),

23   seeking a review of a denial of a period of disability, disability insurance benefits

24   ("DIB"), and supplemental security income ("SSI").  The parties have fully briefed

25   the matters in dispute, and the court deems the matter suitable for adjudication

26   without oral argument.

27         Plaintiff presents two disputed issues for decision:  (1) whether the

28

Administrative Law Judge ("ALJ") properly considered the opinion of a treating physician; and (2) whether the ALJ properly considered plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-9; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-11.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly consider the opinion of the treating physician and plaintiff's crediblity. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was thirty-one years old on her alleged disability onset date, and is a high school graduate with a medical assistant certification. AR at 44-45, 100. Plaintiff has past relevant work as a clerk and medical assistant. *Id*. at 51.

On June 18, 2010, plaintiff filed applications for a period of disability, DIB, and SSI. *Id*. at 101. The applications were denied initially on October 6, 2010. *Id*. Plaintiff filed a second set of applications on June 22, 2011, which were denied after a hearing on January 28, 2013. *Id.*

On August 30, 2013 and September 25, 2013, plaintiff filed a third set of applications for a period of disability, DIB, and SSI, alleging an onset date of August 15, 2009 due to rheumatoid arthritis, lupus, hypertension, depression, and bone pain. *Id*. at 100, 115. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 162-76.

On December 9, 2014, plaintiff appeared and testified at a hearing before the ALJ. *Id*. at 38-56. The ALJ also heard testimony from Cheryl Chandler, a

vocational expert. *Id*. at 51-53. On January 28, 2015, the ALJ denied plaintiff's claims for benefits. *Id*. at 19-33.

In an earlier decision dated January 28, 2013, an ALJ determined plaintiff was not disabled. AR at 19. Here, the ALJ first determined that plaintiff made a showing a changed circumstance and therefore rebutted the presumption of continuing nondisability. *Id*.

The ALJ then applied the well-known five-step sequential evaluation process. The ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 15, 2009, the alleged disability onset date. *Id*. at 22.

At step two, the ALJ found plaintiff suffered from the following severe impairments: systemic lupus erythematosus; rheumatoid arthritis; and affective disorder. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*.

The ALJ then assessed plaintiff's residual functional capacity,[1] and determined she had the RFC to perform light work, with the limitations that she could: lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours; and occasionally perform postural activities. *Id*. at 24. The ALJ precluded plaintiff from: jobs requiring exposure to temperature extremes; concentrated exposure to vibration, hazards such as hazardous machinery, and heights; and highly stressful jobs such as jobs in customer service

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1 or those requiring high production quotas such as rapid assembly. *Id*.

2 The ALJ found, at step four, that plaintiff was capable of performing her

3 past relevant work as a general clerk and medical assistant. *Id*. at 32.

4 Consequently, the ALJ concluded plaintiff did not suffer from a disability as

5 defined by the Social Security Act ("SSA"). *Id.* at 32-33.

6 Plaintiff filed a timely request for review of the ALJ's decision, which was

7 denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final

8 decision of the Commissioner.

## III.

## STANDARD OF REVIEW

11 This court is empowered to review decisions by the Commissioner to deny

12 benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

13 Administration must be upheld if they are free of legal error and supported by

14 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

15 (as amended). But if the court determines the ALJ's findings are based on legal

16 error or are not supported by substantial evidence in the record, the court may

17 reject the findings and set aside the decision to deny benefits. *Aukland v.*

18 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

19 1144, 1147 (9th Cir. 2001).

20 "Substantial evidence is more than a mere scintilla, but less than a

21 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

22 "relevant evidence which a reasonable person might accept as adequate to support

23 a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

24 F.3d at 459. To determine whether substantial evidence supports the ALJ's

25 finding, the reviewing court must review the administrative record as a whole,

26 "weighing both the evidence that supports and the evidence that detracts from the

27 ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

28

4

affirmed simply by isolating a specific quantum of supporting evidence.'"
*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.     The ALJ Failed to Properly Consider the Treating Physician's Opinion

Plaintiff argues the ALJ failed to properly consider the opinion of her treating physician, Dr. Thang Le.  P. Mem. at 2-5.  Specifically, plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting Dr. Le's opinion.  *Id*.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. §§ 404.1527(b), 416.927(b).[2]  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§  404.1527(c)(1)-(2), 416.027(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight

---

[2]     The Social Security Administration issued new regulations effective March 27, 2017.  All regulations cited in this decision are effective for cases filed prior to March 27, 2017.

because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. Dr. Thang Le

Dr. Thang Le, a rheumatologist, treated plaintiff from June 17, 2010 through the date of the opinion. *See* AR at 533-36, 1077-79. Plaintiff was referred to Dr. Le after complaining of fatigue and pain, and a positive antinuclear antibody ("ANA") test.[3] *See id*. at 484, 533-36. At the initial consultation, plaintiff reported fatigue the past three years, and constant moderate to severe pain and stiffness of the hands, wrists, elbows, shoulders, neck, lower back, hips, knees, and feet the past year. *Id*. at 533. Dr. Le observed plaintiff had tenderness to palpation in the

---

[3] An ANA test is used to determine whether someone has an autoimmune disorder such as lupus or rheumatoid arthritis. A positive ANA test does not automatically mean the person tested has lupus. *See* http://www.mayoclinic.org/tests-procedures/ana-test/basics/definition/prc-20014566.

hand joints, wrists, elbows, knees, and ankles, and 12/18 tender points. *Id*. at 535.
Based on the initial examination and ANA test, Dr. Le's impression was that
plaintiff had polyarthralgia and fatigue, and plaintiff should be evaluated for
systemic lupus erythematosus. *Id*.

Dr. Le continued to treat plaintiff for at least four years. During that time,
plaintiff consistently reported to Dr. Le that she had constant moderate to severe
pain and stiffness in the morning. *See, e.g., id*. at 619, 667, 1165. Plaintiff
reported periods of improvement, which appeared to correspond with changes in
medication. *See, e.g., id*. at 649, 912, 1071. Upon physical examination, Dr. Le
initially observed plaintiff had tenderness to palpation at her fingers, ankle joints,
and elbows, but later only documented tenderness to palpation in her elbow,
fingers, and ankle joints. *See, e.g., id.* at 602, 647, 668, 677, 1060. Dr. Le also
observed a decrease in tender points, starting with 14/18 in July 2010 and
decreasing to 3/18 by October 2013. *See id*. at 677, 919. The 2014 treatment notes
do not indicate any trigger points, but Dr. Le noted plaintiff developed a painful
arc of the shoulders. *See id*. at 1060, 1069. Throughout the treatment period, Dr.
Le also observed plaintiff had Raynaud's phenomenon, muscle weakness, and
parethesia. *See, e.g., id*. at 602, 608, 647, 1060.

Dr. Le ordered multiple blood tests during the course of treatment. After
reviewing the initial positive ANA test, Dr. Le ordered a lupus panel, which was
negative. *Id*. at 751. After a subsequent December 2010 ANA test was positive,
Dr. Le ordered another lupus panel, which again was negative. *See id*. at 662, 741,
744. A June 2013 ANA test was negative. *Id*. at 598. Plaintiff's blood tests,
however, showed an elevated C-reactive protein. *See, e.g., id*. at 929, 931, 933.
Based on the tests, plaintiff's complaints, and clinical findings, Dr. Le diagnosed

plaintiff with seronegative rheumatoid arthritis.[4]  *See id*. at 603.

Dr. Le treated plaintiff with various medications.  In 2010, Dr. Le treated plaintiff with prednisone and hydrooxychloroquine.  *See id*. at 669, 673.  When those medications did not appear to have a significant effect on plaintiff's symptoms, Dr. Le switched to Lyrica, which helped ease the symptoms, but her health plan declined to authorize it.  *See id*. at 658, 661, 664, 669.  Dr. Le then switched plaintiff to Gabapentin, which did not provide relief.  *See id*. at 655.  In May 2011, Dr. Le initiated a trial of methotrexate and Percocet, which caused a significant reduction in pain and stiffness.  *See id*. at 652, 657.  Due to side effects, however, plaintiff was taken off of methotrexate in May 2012.  *See id*. at 634, 639, 642.  By April 2013, plaintiff reported the Percocet was no longer effective so Dr. Le added Humira to the treatment regimen.  *See id*. at 619, 621.  Dr. Le discontinued the Humira four months later due to the lack of improvement and side effect of skin lesions.  *See id*. at 606.  Dr. Le then treated plaintiff with Enbrel for six months before switching to Remicade.  *See id*. at 918, 1061.

On December 8, 2014, Dr. Le completed a Medical Source Statement of Ability to Do Work Related Activities ("2014 Opinion").  *Id*. at 1077-79.  Dr. Lee diagnosed plaintiff with rheumatoid arthritis based on plaintiff's reported symptoms and the clinical findings, including the positive ANA tests and elevated C-reactive protein.  *Id*. at 1077.  Dr. Le opined plaintiff:  could sit for only twenty minutes a time for a total of four hours; could stand for ten minutes at a time; could stand or walk for less than a total of two hours in a normal workday; and required the option to shift positions at will from sitting, standing, and walking.  *Id*. at 1077-78.  Dr. Le also opined plaintiff required a job that allowed her to take an

---

[4]  Seronegative rheumatoid arthritis is the diagnosis of rheumatoid arthritis without the presence of certain antibodies in the patient's blood.  *See* https://www.rheumatoidarthritis.org/ra/types/seronegative/.

unscheduled break every thirty minutes; could occasionally lift less than ten pounds; had various postural, manipulative, and environmental limitations; and would be off task for at least twenty-five percent of the time. *Id*. at 1078-79.

## 2. **The Stage Agency Physicians**

Dr. F. Kalmar and Dr. J. Hartman, state agency physicians, reviewed plaintiff's medical records as of November 2013 and February 2014 respectively. *See id*. at 116-24, 134-43. Based on a review of the records, both state agency physicians diagnosed plaintiff with inflammatory arthritis. *See id*. at 109, 124, 139, 151. The state agency physicians opined plaintiff had the RFC to: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. *See id*. at 110-11, 125-26, 140-41, 152-53. The state agency physicians also opined plaintiff had certain environmental limitations. *See id*. at 111, 126, 141, 153.

## 3. **The ALJ's Findings**[5]

In reaching his RFC determination, the ALJ gave great weight to the opinions of the state agency physicians, finding that the opinions were consistent with the objective medical evidence. *Id*. at 30-31. Without expressly stating so, the ALJ gave no weight to the opinion of Dr. Le. *Id*. at 31. The ALJ stated Dr. Le failed to provide clinical or diagnostic findings to support his functional assessment, and Dr. Le's opinion was inconsistent with the objective medical

---

[5]   At step two, the ALJ found plaintiff suffered from the severe impairment of systemic lupus erythematosus. AR at 22. It is unclear to this court how the ALJ reached this determination. Although lupus was suspected, the treating and state agency physicians all concluded that plaintiff did not suffer from lupus. *See id*. at 109, 124, 139, 151, 1077. Nevertheless, despite the apparent lack of substantial evidence supporting the ALJ's step two finding, it does not affect this decision.

evidence. *Id.*

The ALJ's first reason for discounting Dr. Le's opinion – failure to provide medically acceptable clinical or diagnostic findings – was not supported by substantial evidence. *Id.* In the 2014 Opinion, Dr. Le diagnosed plaintiff with rheumatoid arthritis and listed several clinical findings to support his opinion – plaintiff's joint tenderness and swelling, positive ANA test, and elevated C-reactive protein. *Id.* at 1077. The treatment records documenting these findings were a part of the administrative record. *See, e.g., id.* at 602, 647, 677, 744, 929, 931, 1060. Accordingly, a failure to provide clinical or diagnostic findings was not a legally sufficient reason to give Dr. Le's opinion no weight.

The ALJ's second reason for giving Dr. Le's opinion no weight was that it was inconsistent with the objective medical evidence. *See id.* at 31; *Batson v. Comm'r*, 359 F.3d 1190,1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). The ALJ determined the evidence only showed mild to moderate tenderness to palpation at the fingers, wrist, and ankle joints. *See* AR at 31. Although the ALJ correctly found that Dr. Le only reported mild to moderate tenderness in some of the treatment notes, a large percentage of the treatment notes indicated findings of tenderness in the fingers, wrists, elbows, and ankles without reference to severity, as well as tender points. *See, e.g., id.* at 535, 620, 647, 653, 671, 677. In addition to tenderness, there were other physical findings and clinical tests to support Dr. Le's opinion. Dr. Le observed plaintiff had Raynaud's phenomenon, muscle weakness, and parathesia. *See, e.g., id.* at 602, 608, 635, 647, 1060. And the laboratory findings indicated plaintiff had positive ANA tests and an elevated C-reactive protein. *See, e.g., id.* at 744, 929, 931, 933, 935. As such, the ALJ's second reason for discounting Dr. Le's opinion – inconsistency with the objective medical evidence – was similarly not supported

by substantial evidence.

Accordingly, the ALJ failed to cite specific and legitimate reasons supported by substantial evidence for giving Dr. Le's opinion no weight.

## B.  The ALJ Failed to Properly Consider Plaintiff's Credibility

Plaintiff argues the ALJ failed to properly consider her credibility.  P. Mem. at 6-9.  Specifically, plaintiff contends the reasons offered for finding her less credible were not clear and convincing and supported by substantial evidence.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[6]  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing a claimant's credibility, including:  (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

---

[6]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan*, 246 F.3d at 1203 n.1 (internal citations omitted).

1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 27. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) her alleged symptoms were inconsistent with the objective evidence; (2) her activities of daily living were inconsistent with her alleged symptoms; and (3) plaintiff received conservative treatment. *Id.* at 26.

In a Function Report dated October 11, 2013 plaintiff stated she was very fatigued, had lots of pain, would lose sensation in her hands and legs, could only walk about half a block without needing to rest, and used a cane to walk. *See id*. at 299, 304-05. Plaintiff reported she needed help with personal hygiene, seldom cooked because the heat from the stove caused pain and swelling in her hands, and it took her four and a half hours to do laundry and clean. *See id.* at 299, 301.

At the December 9, 2014 hearing, plaintiff testified that she was very fatigued, her medicine made her drowsy, and she had constant pain in her joints. *See id*. at 45, 48-49. Plaintiff testified that, in a typical day, she laid down for an hour and a half after taking her medications for a total of about four to six hours in a day, saw her children leave for school, and helped her children with their homework for thirty minutes. *Id*. at 48. Plaintiff sometimes helped with chores such as washing dishes and cleaning the counters, but could only do it for about forty-five minutes before needing a break and only for a total of two hours in a day. *See id*. at 49-50. Plaintiff explained she could not cook because her finger joints locked when she got near heat. *See id*. at 50. Plaintiff further testified that, about two days a week, she was able to take her children to school, which was 0.8 miles away. *See id*.

The first reason the ALJ provided for finding plaintiff less credible was that the severity of her alleged symptoms was inconsistent with the objective evidence. *Id*. at 26; *see Bunnell*, 947 F.2d at 346-47 (the lack of objective medical evidence to support a claimant's pain allegations may be a factor to consider in the credibility assessment but may not be the sole reason to discredit a claimant). But as discussed above, there was objective medical evidence to support plaintiff's symptoms. Dr. Le observed tenderness in plaintiff's joints, in particular in her fingers and ankle, and that plaintiff had a painful arc of the shoulders, Raynaud's phenomenon, muscle weakness, and parasthesia. *See, e.g.,* AR at 535, 602, 620, 647, 653, 677, 1072. Moreover, the blood tests indicated plaintiff had positive ANA tests on occasions and an elevated C-reactive protein. *See, e.g., id*. at 744, 929, 935.

Second, the ALJ discounted plaintiff's credibility because her daily activities were inconsistent with a debilitating condition and some of the physical and mental abilities required to perform her daily activities were transferable to an employment setting. *Id*. at 26. Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti*, 533 F.3d at 1039. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The activities cited by the ALJ were not inconsistent with plaintiff's alleged symptoms. Notwithstanding the fact that plaintiff somewhat inconsistently testified she could not cook and reported she

could not take care of her children,[7] plaintiff's ability to perform chores in forty-five-minute intervals for a total of two hours, help her children with homework in thirty-minute intervals, drive 0.8 miles to her children's school twice a week, and perform personal grooming activities was not inconsistent with her testimony concerning her pain, fatigue, and need to rest.

Morever, although a claimant's ability "to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit her, this was not the case here. *See Morgan*, 169 F.3d at 600. While plaintiff's ability to do chores and help her children with homework may be transferrable to a work setting, the record does not indicate that plaintiff spent a substantial part of her day engaging in such activities. As such, the evidence does not support the ALJ's finding that plaintiff's daily activities were inconsistent with her alleged symptoms.

The ALJ's final reason for finding plaintiff less credible – conservative treatment – was similarly not clear and convincing and supported by substantial evidence. *See* AR at 26; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted). The ALJ found plaintiff did not "generally receive[] the type of medical treatment one would expect for a totally disabled individual." AR at 26. To the contrary, the treatment records indicate Dr. Le treated plaintiff's rheumatoid arthritis aggressively. As discussed above, Dr. Le prescribed an aggressive regimen of drugs, including prednisone, hydrooxychloroquine, methotrexate, Humira, and Remicade. *See id*. at 621, 652, 669, 673, 1061. Plaintiff often

---

[7] The ALJ stated plaintiff testified she prepared simple meals, but then also stated that plaintiff testified she could not cook due to her joints locking. *See* AR at 25. Plaintiff testified and reported that she did not cook; however, she reported to a consultative psychiatrist that she cooked. *See id*. at 903.

experienced significant side effects such as transaminitis and skin lesions,
requiring Dr. Le to switch her to a new regimen. *See id*. at 606, 634. Although
plaintiff had not undergone any surgical treatments, there is no evidence to suggest
that her treatment was conservative. *See Gentry v. Comm'r*, 741 F.3d 708, 725
(6th Cir. 2014) (finding that the prescription of higher risk biologic medications
such as methotrexate and Humira indicated claimant's arthritic condition was at
least moderate to severe); *Jones v. Astrue*, 2008 WL 1970645, at *16 (E.D. Cal.
May 5, 2008) (suggesting Remicade and Humira injections were not conservative
treatment); *but see Nash v. Astrue*, 2012 WL 6700582, at *9 (C.D. Cal. Dec. 21,
2012) (declining to second guess the ALJ's characterization of Humira and
Remicade as conservative treatment).

Accordingly, the ALJ failed to properly consider plaintiff's credibility. The
reasons provided for discounting plaintiff's credibility were not clear and
convincing and supported by substantial evidence.

### V.

### **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and
award benefits is within the discretion of the district court. *McAllister v. Sullivan*,
888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this
discretion to direct an immediate award of benefits where: "(1) the record has been
fully developed and further administrative proceedings would serve no useful
purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
evidence, whether claimant testimony or medical opinions; and (3) if the
improperly discredited evidence were credited as true, the ALJ would be required
to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020
(9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with
instructions to calculate and award benefits). But where there are outstanding

issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to properly consider Dr. Le's opinion and plaintiff's credibility. On remand, the ALJ shall consider the physical limitations opined by Dr. Le and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it. The ALJ shall also reconsider plaintiff's credibility, and either credit her subjective complaints or provide clear and convincing reasons for rejecting them. The ALJ shall then again determine plaintiff's severe impairments at step two, reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: January 31, 2018

_____
SHERI PYM
United States Magistrate Judge